# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>      v.<br><br>ANGEL ALONSO,<br><br>                    Defendant. | Case No. 3:20-cr-00045-SLG |

## ORDER REGARDING MOTION TO SUPPRESS

Before the Court at Docket 41 is defendant Angel Alonso's Motion to Suppress Evidence and Statements. The government responded in opposition at Docket 48. Neither party requested an evidentiary hearing or oral argument, and neither was necessary to the Court's determination of the motion.

Mr. Alonso seeks an order suppressing "evidence obtained as a result of 1) the search of the bag seized from his person, on the grounds that he did not validly consent to such a search, and 2) his un-*Mirandized* statements made during the course of custodial interrogation."[1] The government responds that the motion should be denied because Mr. Alonso "freely and voluntarily consented to the search of his bag, and because he was not in custody when the officers questioned

---

[1] Docket 41 at 1.

him about it."[2]  Having reviewed the parties' filings and exhibits, the Court makes the following findings of fact and conclusions of law.

**I.  Facts**

The first portion of Mr. Alonso's interaction with law enforcement was captured on a security guard's body camera, and most of the interaction was captured on a police officer's microphone, from which the Court derives the facts of this case.[3]  On July 28, 2019, at approximately 2:00 a.m., Mr. Alonso was at the Unisea Galley in Unalaska and behaving strangely.  Mr. Alonso was contacted by Unisea security guard Lizeth Alvarez, who was wearing a body camera and stayed near him until the police eventually placed him under arrest.  A second Unisea security guard briefly contacted Mr. Alonso as well, but then left to call the Unalaska Police Department.  Before the police arrived, Mr. Alonso was pacing around the Unisea Galley—going between the lobby and the cafeteria—speaking on his cell phone and occasionally interacting with security guard Alvarez.

Unalaska police officers Sotelo and Tapaoan responded to the Unisea Galley, along with two additional Unisea security guards.  When Mr. Alonso saw them coming in the door to the cafeteria from the lobby, he continued his phone call but walked directly over to them.[4]  When Officer Sotelo said "hey there" to Mr.

---

[2] Docket 48 at 2.

[3] *See* Def. Exh. 3 (video); Def. Exh. 4 (audio).

[4] Def. Exh. 3 at 18:10.

Case No. 3:20-cr-00045-SLG, *United States v. Alonso*
Order Re Motion to Suppress
Page 2 of 13
Case 3:20-cr-00045-SLG-MMS   Document 54   Filed 01/24/22   Page 2 of 13

Alonso, Mr. Alonso immediately stated "I have two ounces of crystal meth on me. You guys are going to find out I have two ounces of crystal meth on me."[5] The security guards and officers allowed Mr. Alonso to continue his phone call.[6] While Mr. Alonso was on the phone, security guard Alvarez told Officer Tapaoan that Mr. Alonso had "something hanging" in his clothes.[7] Officer Tapaoan walked back to Mr. Alonso and asked if Mr. Alonso "has anything" on him.[8] Mr. Alonso answered, again twice saying "I got two ounces of crystal meth on me."[9] Officer Sotelo then asked if Mr. Alonso has any weapons or if he "mind[s] if I pat you down."[10] Mr. Alonso answers, "No, I don't. You guys run this shit, man."[11] Officer Sotelo then put her hands on Mr. Alonso's shoulders and turned him toward the wall by the door to the lobby and instructed him to stand facing the wall.[12] Mr. Alonso asked if he could pray, and Officer Sotelo told him yes.[13] Mr. Alonso finished his phone call, set his phone on the ground, and Officer Sotelo said, "I'm not doing anything

---

[5] Def. Exh. 4 at 00:07.

[6] Def. Exh. 3 at 18:40.

[7] Def. Exh. 3 at 18:55.

[8] Def. Exh. 3 at 19:00.

[9] Def. Exh. 3 at 19:03.

[10] Def. Exh. 3 at 19:14.

[11] Def. Exh. 3 at 19:14.

[12] Def. Exh. 3 at 19:18.

[13] Def. Exh. 3 at 19:23.

Case No. 3:20-cr-00045-SLG, *United States v. Alonso*
Order Re Motion to Suppress
Page 3 of 13
Case 3:20-cr-00045-SLG-MMS   Document 54   Filed 01/24/22   Page 3 of 13

to you, you're good okay?."[14] Mr. Alonso then prayed out loud for approximately fifty seconds.[15] During this time, one of the Unisea security guards left the cafeteria and stood out in the lobby but could be seen through the glass doors. After Mr. Alonso finished praying, Officer Sotelo asked whether he had consumed any of the methamphetamine.[16] When Mr. Alonso answered that he had, Officer Sotelo asked whether he took too much.[17] Mr. Alonso denied that he took too much methamphetamine and declined medical help.[18]

Officer Sotelo then reinstructed Mr. Alonso to put his hands on the wall and asked if he had anything sharp or that could injure her.[19] During the pat-down, the Unisea security guard came back into the cafeteria from the lobby.[20] Officer Tapaoan asked Mr. Alonso if he had any needles on him, if he was missing his identification, and if he knew why his identification was found in a local park.[21] Mr. Alonso answered that he "fucked up" and "keeps fucking up."[22] Officer Tapaoan

---

[14] Def. Exh. 4 at 1:22.

[15] Def. Exh. 3 at 19:40–20:28.

[16] Def. Exh. 3 at 20:37.

[17] Def. Exh. 3 at 20:43.

[18] Def. Exh. 3 at 20:55; Def. Exh. 4 at 2:35.

[19] Def. Exh. 3 at 21:15.

[20] Def. Exh. 3 at 22:10.

[21] Def. Exh. 3 at 22:28; Def. Exh. 4 at 4:14.

[22] Def. Exh. 4 at 4:53.

Case No. 3:20-cr-00045-SLG, *United States v. Alonso*
Order Re Motion to Suppress
Page 4 of 13
Case 3:20-cr-00045-SLG-MMS   Document 54   Filed 01/24/22   Page 4 of 13

made small talk with Mr. Alonso about Mr. Alonso's girlfriend and again offered medical assistance and asked if Mr. Alonso wanted to talk to anyone.[23] Officer Sotelo located a plastic grocery bag near Mr. Alonso's waistband and asked him if she could open it.[24] Mr. Alonso replied, "You're the police." Officer Sotelo repeated the question about whether she could open the plastic bag, and Mr. Alonso answered, "Of course you can, you run shit."[25] After opening the bag, Officer Sotelo asked Mr. Alonso about an item she held up to show him, to which he responded that it was baggies.[26] Officer Sotelo then asked whether Mr. Alonso sells and how much.[27] Officer Sotelo then showed him a baggie of white powder and asked him what it is, and Mr. Alonso replied that it was crystal meth.[28] The officer then asked who Mr. Alonso sold methamphetamine to and how long he had been selling, but he does not appear to answer.[29] Officer Sotelo asked Mr. Alonso how much he had consumed, and he answered that he had been smoking for three

---

[23] Def. Exh. 3 at 24:00.

[24] Def. Exh. 3 at 24:40; Def. Exh. 4 at 6:23.

[25] Def. Exh. 4 at 6:28.

[26] Def. Exh. 4 at 6:53.

[27] Def. Exh. 3 at 25:10.

[28] Def. Exh. 3 at 25:15; Def. Exh. 4 at 7:05.

[29] Def. Exh. 3 at 25:26.

Case No. 3:20-cr-00045-SLG, *United States v. Alonso*
Order Re Motion to Suppress
Page 5 of 13
Case 3:20-cr-00045-SLG-MMS   Document 54   Filed 01/24/22   Page 5 of 13

days.[30] The two officers then placed Mr. Alonso in handcuffs and told him that he was under arrest.[31] No *Miranda* warnings are given at that time.

After Mr. Alonso was in handcuffs, Officer Tapaoan asked him "where did you get this," referring to the plastic bag containing the methamphetamine, and Officer Sotelo asks "where did you get the meth from? From someone here?"[32]

## II. Mr. Alonso's consent to search the plastic bag was given voluntarily.

The first inquiry is whether, under the totality of the circumstances at the time he gave consent to search the plastic bag, Mr. Alonso's consent was voluntary.[33] Non-dispositive factors courts consider are "(1) whether defendant was in custody; (2) whether the arresting officers have their guns drawn; (3) whether *Miranda* warnings have been given; (4) whether the defendant was told he has a right not to consent; and (5) whether defendant was told a search warrant could be obtained."[34] All but one of these factors support the finding that Mr. Alonso voluntarily consented to the search of the plastic bag.

As to the first factor, Mr. Alonso was not in custody at the time the police asked for consent to search the plastic bag (see Part III, *infra*). As to the second

---

[30] Def. Exh. 3 at 25:55.

[31] Def. Exh. 3 at 26:09.

[32] Def. Exh. 3 at 26:30.

[33] Mr. Alonso does not assert that his consent to a pat-down was involuntary or that the pat-down exceeded the scope of a permissible protective frisk.

[34] *United States v. Mora-Alcaraz*, 986 F.3d 1151, 1157 (9th Cir. 2021) (quoting *United States v.*

Case No. 3:20-cr-00045-SLG, *United States v. Alonso*
Order Re Motion to Suppress
Page 6 of 13

factor, neither the police officers nor the security guards brandished any type of weapon. There is no evidence that the police or security guards used threats, violence, or other improper promises or influence to obtain Mr. Alonso's consent to search the plastic bag. As to the third factor, although Mr. Alonso had not been given *Miranda* warnings at the time of his consent to search the plastic bag, he was not in custody at that precise time, and "[i]t would . . . make little sense to require that *Miranda* warning . . . be given by police before requesting consent" when the suspect is not yet under arrest.[35] As to the fourth factor, Mr. Alonso was not told he had a right not to consent, so this factor weighs in Mr. Alonso's favor. However, "consent to a search is not necessarily involuntary simply because officers failed to provide notice of the right to refuse."[36] As to the fifth factor, Mr. Alonso was not told that a search warrant could be obtained for the plastic bag, "so as to imply that [his] refusal to consent would be fruitless."[37]

Notably, when the police first contacted Mr. Alonso, he volunteered that they would find two ounces of crystal meth on him. When Officer Tapaoan then asked

---

*Johnson*, 845 F.3d 1265, 1276–77 (9th Cir. 2017)).

[35] *United States v. Russell*, 664 F.3d 1279, 1281–82 (9th Cir. 2012) (quoting *United States v. Vongxay*, 594 F.3d 1111, 1120 (9th Cir. 2010) (alterations in *Russell*). Even if Mr. Alonso had been in custody at the time he gave consent to search the plastic bag, the Ninth Circuit "has long-held that the failure to give Miranda warnings is not 'dispositive of whether an individual voluntarily consented to a search.'" *United States v. Mora-Alcaraz*, 986 F.3d 1151, 1157 (9th Cir. 2021) (quoting *United States v. Ritter*, 752 F.2d 435, 439 (9th Cir. 1985)).

[36] *United States v. Russell*, 664 F.3d 1279, 1282 (9th Cir. 2012) (citing *United States v. Comier*, 220 F.3d 1103, 1113 (9th Cir. 2000)).

[37] *United States v. Johnson*, 875 F.3d 1265, 1277 (9th Cir. 2017). *But see United States v.*

Case No. 3:20-cr-00045-SLG, *United States v. Alonso*
Order Re Motion to Suppress
Page 7 of 13
Case 3:20-cr-00045-SLG-MMS   Document 54   Filed 01/24/22   Page 7 of 13

Mr. Alonso if he had anything on him, Mr. Alonso replied "two ounces of crystal meth." The fact that Mr. Alonso had already twice admitted to possessing crystal meth supports the conclusion that Mr. Alonso voluntarily consented to the search of the plastic bag that contained the methamphetamine.

The Court finds that, under the totality of the circumstances, Mr. Alonso's consent to the search of the plastic bag was voluntary.

### III. Mr. Alonso was not in custody until he was handcuffed and told he was under arrest.

In determining whether a suspect was in custody, courts consider whether a reasonable person in the suspect's circumstances would have felt that he was not at liberty to terminate the interrogation and leave.[38] Courts consider the objective circumstances, not the subjective views of either the police officers or the suspect being questioned.[39] Court examine the totality of the circumstances to determine whether a person was in custody and *Miranda* warnings were required.[40] The Ninth Circuit has identified five relevant factors to consider in determining whether a defendant was in custody: "(1) the language used to

---

*Torres-Sanchez*, 83 F.3d 1123, 1130 (9th Cir. 1996) ("While [the officer] gave no Miranda warnings, never informed Sanchez of his right to refuse the request for consent, and never explained that a search warrant could be obtained, the absence of these warnings does not invalidate the consent.").

[38] *Howes v. Fields*, 565 U.S. 499, 509 (2012).

[39] *Stansbury v. California*, 511 U.S. 318, 323 (1994).

[40] *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

Case No. 3:20-cr-00045-SLG, *United States v. Alonso*
Order Re Motion to Suppress
Page 8 of 13
Case 3:20-cr-00045-SLG-MMS   Document 54   Filed 01/24/22   Page 8 of 13

summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual."[41] These considerations are not exhaustive, and "other factors may also be pertinent to, and even dispositive of, the ultimate determination whether a person would have believed he could freely walk away from the interrogators."[42]

### A. Language used to summon Mr. Alonso

The first factor is the language used to summon the individual. Here, Mr. Alonso voluntarily approached the police when they entered the cafeteria. The officers did not order or command Mr. Alonso to speak with them.[43] Nor did they communicate that he was not free to walk away from them. This factor weights against finding that Mr. Alonso was in custody during most of the interaction.

### B. Confrontation with evidence of guilt

The second factor is "the extent to which the defendant is confronted with evidence of guilt." Here, Officer Sotelo showed Mr. Alonso the plastic bag she

---

[41] *United States v. Bassignani*, 575 F.3d 879, 883 (9th Cir.2009) (quoting *Kim*, 292 F.3d 696, 974 (9th Cir. 2002)).

[42] *Kim*, 292 F.3d at 974.

[43] *See United States v. Crawford*, 372 F.3d 1048, 1059 (9th Cir. 2004) (finding degree to which a defendant has "agreed to accompany officers to the police station or to an interrogation room" important to the determination of whether an interrogation is non-custodial); *see also Bassignani*, 575 F.3d at 884 (finding that an officer's "instruction" that defendant "remove himself from the computer" and go to a conference room for questioning militates against a finding that defendant voluntarily agreed to accompany the officers to the conference room).

Case No. 3:20-cr-00045-SLG, *United States v. Alonso*
Order Re Motion to Suppress
Page 9 of 13
Case 3:20-cr-00045-SLG-MMS   Document 54   Filed 01/24/22   Page 9 of 13

found, asked Mr. Alonso what was in the plastic bag, and asked if she could open it.[44] After opening the bag, Officer Sotelo asked Mr. Alonso about an item she held up to show him, to which he responded that it was baggies.[45] Officer Sotelo then showed Mr. Alonso a baggie of white powder and asked him what it was, and Mr. Alonso replied that it was crystal meth.[46] Although the officers showed Mr. Alonso what they had found on him, Mr. Alonso had already announced that they would find crystal meth—it was only after Mr. Alonso's admissions that the officers confronted him about the drugs and baggies located on him. This factor weighs against a finding that Mr. Alonso was in custody when the plastic bag was taken from his person and during its subsequent search.

### C. The physical surroundings

The third factor is "the physical surroundings of the interrogation." The interaction took place in the nearly empty cafeteria of the Unisea Galley, where Mr. Alonso was an employee. The two police officers stood next to Mr. Alonso, while the three security guards stood a few feet away. The officers did not direct Mr.

---

[44] Def. Exh. 3 at 24:40; Def. Exh. 4 at 6:23.

[45] Def. Exh. 4 at 6:53.

[46] Def. Exh. 3 at 25:15; Def. Exh. 4 at 7:05.

Case No. 3:20-cr-00045-SLG, *United States v. Alonso*
Order Re Motion to Suppress
Page 10 of 13
Case 3:20-cr-00045-SLG-MMS   Document 54   Filed 01/24/22   Page 10 of 13

Alonso to a new location.[47] This factor weighs against a finding that he was in custody prior to being so informed.

### D. The duration of detention

The fourth factor is the "duration of detention," which weighs against a finding of custody. Approximately eight minutes passed between when Mr. Alonso first walked up to the police officers and when they placed him in handcuffs. Because of the brevity of the interaction, the Court finds that the duration does not support a finding that Mr. Alonso was in custody prior to being informed of the arrest.[48]

### E. The degree of pressure applied to detain Mr. Alonso

The final factor is the degree of pressure applied to detain the individual. This evidence leans against a finding of custody. Here, two police officers and three security guards effectively surrounded Mr. Alonso, and none of them told him that he was free to leave. However, none of the police officers or security guards brandished any weapons. The police officers allowed Mr. Alonso to pray when he requested to. Officer Sotelo only touched Mr. Alonso after he consented to a pat-

---

[47] *United States v. Bassignani*, 575 F. 3d 879, 884 (9th Cir. 2008) (recognizing that the Ninth Circuit has held that "an interrogation conducted in familiar surroundings weighs against a finding that the defendant was in custody").

[48] *See United States v. Gregory*, 891 F.2d 732, 735 (9th Cir. 1989) (interrogation deemed non-custodial, in part because it "lasted only a few minutes"). *Cf. United States v. Kim*, 292 F.3d 969, 977 (9th Cir. 2002) (finding a "full-fledged interrogation" where suspect was questioned for at least 50 minutes and detained even longer).
Case No. 3:20-cr-00045-SLG, *United States v. Alonso*
Order Re Motion to Suppress
Page 11 of 13

down search and did not otherwise "handle" him. None of the police officers or security guards raised their voices, told Mr. Alonso he could not leave, or threatened him. To the contrary, the police officers and security guards remained calm and respectful to Mr. Alonso throughout the interaction.

The Court finds, based on the totality of the circumstances, that Mr. Alonso was not in custody until the police officers handcuffed him and told him that he was under arrest. To the extent that the encounter appears to have started out as purely consensual and gradually shifted to a custodial situation, the Court finds that Mr. Alonso was not in custody when he made his initial statements that the officers would find crystal meth on him nor when he consented to the search of the plastic bag found on his person.

However, once the officers handcuffed Mr. Alonso and told him that he was under arrest, the police were required to give *Miranda* warnings prior to further interrogation.[49] However, the police officers failed to do so. After Mr. Alonso was handcuffed, one of the officers asked him "where did you get this," referring to the plastic bag containing the methamphetamine, and the other officer asked "where did you get the meth from? From someone here?"[50] It appears from the audio recording that Mr. Alonso answered the questions, although it is indecipherable.

---

[49] *United States v. Bekowies*, 432 F.2d 8, 12 (9th Cir. 1970) (noting that a suspect can be in custody even without handcuffs or expressly being told that he is under arrest).

[50] Def. Exh. 3 at 26:30; Def. Exh. 4 at 8:13–8:23.

Case No. 3:20-cr-00045-SLG, *United States v. Alonso*
Order Re Motion to Suppress
Page 12 of 13
Case 3:20-cr-00045-SLG-MMS   Document 54   Filed 01/24/22   Page 12 of 13

Once Officer Sotelo takes Mr. Alonso to her patrol car, she asks him "how long have you been doing meth for?"[51] Mr. Alonso again answers the question, although it is indecipherable. Mr. Alonso's answers to these questions from police officers are not admissible.

The Court has reviewed the remainder of the audio recording, and Mr. Alonso's remaining incriminating statements are voluntarily made and are not in response to police questioning.

## CONCLUSION

In light of the foregoing, IT IS ORDERED that the motion at Docket 41 is GRANTED IN PART and DENIED IN PART as set forth in this order.

DATED this 24th day of January, 2022, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[51] Def. Exh. 4 at 10:14.

Case No. 3:20-cr-00045-SLG, *United States v. Alonso*
Order Re Motion to Suppress
Page 13 of 13
Case 3:20-cr-00045-SLG-MMS   Document 54   Filed 01/24/22   Page 13 of 13